ACCEPTED
15-24-00114-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
8/25/2025 4:30 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-24-00114-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
8/25/2025 4:30:39 PM
CHRISTOPHER A. PRINE
Clerk

# In the Court of Appeals
# for the Fifteenth Judicial District

———

Cecile Erwin Young, in her Official Capacity as the Executive Commissioner of the Texas Health and Human Services Commission; Molina Healthcare of Texas, Inc.; and Aetna Better Health of Texas, Inc.,

*Appellants*,

*v.*

Cook Children's Health Plan, Texas Children's Health Plan, Superior Health Plan, Inc., and Wellpoint Insurance Company,

*Appellees.*

———

On Appeal from the
353rd Judicial District Court, Travis County

———

## APPELLANT CECILE ERWIN YOUNG'S CONSOLIDATED RESPONSE TO APPELLEES' MOTIONS FOR TEMPORARY RELIEF

———

# TABLE OF CONTENTS

**Page(s)**

Table of Authorities ................................................................................................ iv

Introduction .......................................................................................................... 1

Statement of Facts ................................................................................................ 2

    I.    Factual Background ................................................................................ 2

        A.   Statutory Background ................................................................... 2

        B.   HHSC's request for proposals to provide managed care
            services on behalf of the State ...................................................... 4

    II.   Procedural Background ........................................................................... 7

Standard of Review .............................................................................................. 9

Summary of the Argument .................................................................................... 9

Argument ............................................................................................................ 11

    I.    Plaintiffs Are Unlikely to Succeed on the Merits of Their Claims ............ 11

        A.   Plaintiffs' claims are unripe and unexhausted .................................. 11

        B.   Plaintiffs lack a judicially enforceable right to compel the
            Commissioner to redo the procurement process ............................... 16

            1.   The procurement statutes contain no "redo" remedy ................ 16

            2.   Redoing the procurement is fundamentally retrospective ........... 18

        C.   The Commissioner did not act ultra vires, but instead within
            the limits of her broad authority and discretion. ............................. 20

            1.   The Commissioner acted well within her broad statutory
                discretion to assess which contracts provide the best value
                to the State ...................................................................... 22

            2.   The manner of giving statutory preferences is not specified
                in the statutes and is within HHSC's discretion .......................... 25

                a.   Plaintiffs lack standing to complain about the
                    statutory preference provisions, which are
                    inapplicable and waived ...................................... 25

                b.   Plaintiffs' counterarguments lack merit .............................. 28

            3.   Disclosure of materials, as required under PIA, does not
                require the procurement to be redone .......................................... 36

4. The trial court justified the temporary injunction with statutory mandates that do not exist ............................................38

II. The Balance of Equities Favors the Commissioner ...................................41

A. The State's interest in its sovereign and discretionary right to procure appropriate services for the People outweighs the consequences to a losing bidder..........................................................42

1. The State would suffer harm to its sovereignty and public resources from a stay ..................................................43

2. Plaintiffs have proven no harm resulting from the procurement, and any harm they could possibly prove would be neither ripe nor irreparable .........................................45

3. If Plaintiffs are successful, any losing bidder would be able to halt important government functions whenever they are dissatisfied....................................................................47

B. The public interest in efficient provision of Medicaid services vastly outweighs the corporate interests of the MCOs.......................48

C. To the extent they are relevant, status quo considerations counsel against granting a stay...........................................................51

Prayer .....................................................................................................................54

# Table of Authorities

**Page(s)**

**Cases:**

*Butnaru v. Ford Motor Co.*,
  84 S.W.3d 198 (Tex. 2002) ................................................................. 51

*City of Austin v. Util. Assocs., Inc.*,
  517 S.W.3d 300 (Tex. App.—Austin 2017, pet. denied)...........................*passim*

*City of El Paso v. Heinrich*,
  284 S.W.3d 366 (Tex. 2009) .................................................................20

*Elcon Enters., Inc. v. Wash. Metro. Area Transit Auth.*,
  977 F.2d 1472 (D.C. Cir. 1992)...................................................... 26, 47

*Fireman's Fund Cnty. Mut. Ins. Co. v. Hidi*,
  13 S.W.3d 767 (Tex. 2000) (per curiam) ............................................. 18

*Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*,
  281 S.W.3d 215 (Tex. App.—Fort Worth 2009, pet. denied)...........................46

*Hall v. McRaven*,
  508 S.W.3d 232 (Tex. 2017)...............................20, 21, 23, 24, 37, 41

*Heckman v. Williamson County*,
  369 S.W.3d 137 (Tex. 2012) .................................................................45

*Hensley v. State Comm'n on Jud. Conduct*,
  692 S.W.3d 184 (Tex. 2024) ............................................................. 15

*Honors Academy, Inc. v. TEA*,
  555 S.W.3d 54 (Tex. 2018).....................................................................34

*Hous. Belt & Terminal Ry. v. City of Houston*,
  487 S.W.3d 154 (Tex. 2016) ....................................................... 20, 21

*Jackson v. SOAH*,
  351 S.W.3d 290 (Tex. 2011) .................................................................37

*Klumb v. Hous. Mun. Emps. Pension Sys.*,
  458 S.W.3d 1 (Tex. 2015).....................................................................30

*M. Steinthal & Co. v. Seamans*,
  455 F.2d 1289 (D.C. Cir. 1971).............................................................47

*Marble Falls ISD v. Scott*,
  275 S.W.3d 558 (Tex. App.—Austin 2008, pet. denied) .................................14

*Morath v. Kingsville ISD*,
   710 S.W.3d 918 (Tex. App.—15th Dist. 2025, no pet.)................................17, 18

*N. Cypress Med. Ctr. Operating Co., Ltd. v. St. Laurent*,
   296 S.W.3d 171 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ...................46

*Nettles v. GTECH Corp.*,
   606 S.W.3d 726 (Tex. 2020) ....................................................... 47, 49

*In re Newton*,
   146 S.W.3d 648 (Tex. 2004) ............................................................ 51

*State ex rel. Off. of Att'y Gen. of Tex. v. City of San Marcos*,
   714 S.W.3d 224 (Tex. App.—15th Dist. 2025, pet. filed) ...............................43

*Palladian Partners, Inc. v. United States*,
   783 F.3d 1243 (Fed. Cir. 2015) ........................................................ 15

*Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*,
   971 S.W.2d 439 (Tex. 1998) .......................................................11, 14

*Perkins v. Lukens Steel Co.*,
   310 U.S. 113 (1940) ................................................................... 35

*Point Energy Partners Permian, LLC v. MRC Permian Co.*,
   669 S.W.3d 796 (Tex. 2023)........................................................ 12, 46

*Riner v. City of Hunters Creek*,
   403 S.W.3d 919 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ...................14

*Rivercenter Assocs. v. Rivera*,
   858 S.W.2d 366 (Tex. 1993) ........................................................... 47

*Smith v. Abbott*,
   311 S.W.3d 62 (Tex. App.—Austin 2010, pet. denied)...............................15, 16

*State v. Hollins*,
   620 S.W.3d 400 (Tex. 2020)............................................................ 43

*In re State*,
   711 S.W.3d 641 (Tex. 2024) (orig. proceeding) ...........................9, 41, 46, 51, 52

*In re Stetson Renewables Holdings, LLC*,
   658 S.W.3d 292 (Tex. 2022) (orig. proceeding) ..................................... 16, 17, 18

*Sw. Elec. Power Co. v. Lynch*,
   595 S.W.3d 678 (Tex. 2020) ........................................................... 12

*Sw. Pharmacy Sols., Inc. v. Tex. HHSC*,
   No. 03-11-00802-CV, 2013 WL 3336868 (Tex. App.—Austin June
   27, 2013, no pet.) (mem. op.) ..........................................................2

*Sys. Applications & Techs., Inc. v. United States*,
 691 F.3d 1374 (Fed. Cir. 2012) .................................................. 17-18

*In re Tex. Dep't of Fam. & Protective Servs.*,
 696 S.W.3d 240 (Tex. App.—San Antonio 2024, orig. proceeding)................. 35

*Tex. Highway Comm'n v. El Paso Bldg. & Constr. Trades Council*,
 234 S.W.2d 857 (Tex. 1950) ...................................................... 10, 18, 35

*Tex. Logos, L.P. v. Tex. Dep't of Transp.*,
 241 S.W.3d 105 (Tex. App.—Austin 2007, no pet.) ...................................... 1, 24

*TGS-NOPEC Geophysical Co. v. Combs*,
 340 S.W.3d 432 (Tex. 2011) ...................................................... 23

*Turner v. Joshua ISD*,
 583 S.W.2d 939 (Tex. App.—Waco 1979, no pet.) ........................................... 45

*Univ. Health Servs., Inc. v. Thompson*,
 24 S.W.3d 570 (Tex. App.—Austin 2000, no pet.) ........................................... 42

*Vote.Org v. Callanen*,
 39 F.4th 297 (5th Cir. 2022) ...................................................... 48

*Waco ISD v. Gibson*,
 22 S.W.3d 849 (Tex. 2000) ...................................................... 11, 12

*Webster v. Comm'n for Law. Discipline*,
 704 S.W.3d 478 (Tex. 2024) ...................................................... 13

*Wilson v. Community Health Choice Texas, Inc.*,
 607 S.W.3d 843 (Tex. App.—Austin 2020, pet. denied)............................ 26-27

*Young v. Tex. Parks & Wildlife Dep't*,
 No. 15-24-00052-CV, 2025 WL 1200947 (Tex. App.—15th Dist.
 Apr. 24, 2025, no pet. h.) (mem. op.)................................................ 34

**Constitutional Provision, Statutes, and Rules:**

28 U.S.C. § 1491(b)(1) ...................................................... 17

42 U.S.C. ch. 7, subch. XXI ...................................................... 2

Tex. Gov't Code:
 § 523.0051................................................................. 2
 § 532.0051................................................................. 2, 3, 43
 Ch. 533................................................................. 3, 5

iii

§ 533.002 .......................................................................5, 22, 26, 39, 40

§ 533.002(1)(B) .......................................................... 39, 40, 44, 50

§ 533.002(6) ................................................................ 39, 40, 44, 50

§ 533.003 ...................................................................... 25, 29, 30, 31

§ 533.003(a) ........................................................................................ 29

§ 533.003(a)(1) .......................................................................... *passim*

§ 533.003(a)(3) .......................................................................... 21, 32

§ 533.004 ............................................................................................ 33

§ 533.004(a) ................................................................................. 27, 33

§ 533.004(a)(2) ........................................................................... 21, 25

§ 533.0035 ............................................................................... 6, 22, 38

Ch. 536 ........................................................................................... 3, 5

§ 536.052 ......................................................................... 5, 26, 31

§ 536.052(a) ................................................................ 21, 25, 31

§ 536.052(b) ................................................................ 3, 31, 43

§ 536.052(d) ............................................ 21, 25, 27, 31, 32

Ch. 540 .................................................................................................. 3

§ 540.0204 .......................................................................................... 29

Ch. 543A .............................................................................................. 3

§ 543A.0052 ..................................................................................... 31

Ch. 552 ............................................................................................... 36

§ 552.002 ............................................................................................ 36

§ 552.221 ............................................................................................ 36

§ 552.301 ............................................................................................ 36

§ 552.302 ............................................................................................ 36

Ch. 2155 ........................................................................................ 3, 5

§ 2155.076 ......................................................................................... 3-4

§ 2155.144 ...................................................................... 5, 22, 23, 26

§ 2155.144(c) ................................................................... 27, 29, 48

§ 2155.144(c)-(d) ........................................................................... 22

§ 2155.144(d) ................................................................................... 22

§ 2155.144(d)(3) ............................................................................. 23

§ 2155.144(d)(5) ............................................................................. 23

§ 2155.144(d)(7) ............................................................................. 23

§ 2155.144(d)(11) ................................................................... 23, 41

§ 2155.144(n) ........................................................................... 27, 28

Tex. Health & Safety Code:

    Ch. 62 ........................................................................................3

    § 62.051(a) ..................................................................3, 41, 43

    § 62.051(b) ............................................................................. 41

    § 62.051(e) .............................................................................22

    § 62.053(3) ..................................................................3, 41, 43

    § 62.055 ..................................................................... 22, 35, 40

    § 62.155 ...................................................................... 22, 31, 40

    § 62.155(c)(1) ........................................................... 21, 40

Tex. Loc. Gov't Code:

    § 252.061 ...............................................................................18

    § 262.033 ...............................................................................18

Tex. R. App. P. 29.3 ............................................... 9, 10, 41, 42, 51, 53

**Other Authorities:**

1 Tex. Admin. Code:

    Ch. 391 ....................................................................................3

    § 391.101 .................................................................22, 36, 39, 40

    § 391.201(d) ........................................................................ 27

    § 391.209 ...........................................................3, 22, 36, 39, 40

    § 391.301 ........................................................................... 3, 7

    § 391.303(b) ...........................................................................3

    § 391.305(a)(1) .........................................................15, 26, 28

    § 391.307(d) ......................................................................7-8

    § 391.307(d)(1) ...................................................................22

34 Tex. Admin. Code:

    § 20.208(d)(3) .............................................................. 36-37

Act of May 29, 2023, 88th Leg., R.S., ch. 1170, § 1, art. IX, sec. 17.09(e), 2023 Tex. Gen. Laws 3573 .............................................52

*Texas Rules of Form: The Greenbook* 11.1 (Texas Law Review Ass′n ed., 15th ed. 2022) ...........................................................................3

## To the Honorable Fifteenth Court of Appeals:

This lawsuit is designed to entrench the interests of third-party Medicaid managed care organizations (MCOs) that lost a competitive procurement for the administration of the State's Medicaid and Children's Health Insurance programs. The Legislature has empowered the Executive Commissioner of the Texas Health and Human Services Commission (HHSC) to determine, within the permissible discretion granted by the relevant statutes, which bidders provide the best value for the State and can best serve the interests of low-income Texans who depend on these programs.

The disappointed bidders' demand to enjoin the Commissioner from "sign[ing], implement[ing], or execut[ing] any contract with any other entity for the STAR/CHIP products," CR.4763, is a quintessential suit to "control state action" that Texas courts have routinely dismissed under the *ultra vires* doctrine. *Tex. Logos, L.P. v. Tex. Dep't of Transp.*, 241 S.W.3d 105, 118 (Tex. App.—Austin 2007, no pet.) (collecting cases). It should go without saying that allowing jilted contractors to highjack the State's procurement process, entrench their own financial interests for the foreseeable future to the tune of billions of dollars, and bar the State from procuring necessary healthcare services for the most vulnerable Texans does not serve the public interest. The Court should accordingly deny the disappointed bidders' motions to perpetuate the trial court's temporary injunction.

## STATEMENT OF FACTS

### I. Factual Background

#### A. Statutory Background

HHSC oversees the administration of Texas Medicaid, which is a federal-state cooperative government program that ensures the most impoverished Americans receive adequate medical care. *E.g.*, Tex. Gov't Code § 532.0051; *Sw. Pharmacy Sols., Inc. v. Tex. HHSC*, No. 03-11-00802-CV, 2013 WL 3336868, at *2-3 (Tex. App.—Austin June 27, 2013, no pet.) (mem. op.). HHSC also oversees and implements Texas's Children's Health Insurance Program (CHIP), which is designed to ensure Texas children and their families receive adequate health coverage that Medicaid and other programs may not provide. 12.RR.511; *see also* 42 U.S.C. ch. 7, subch. XXI; 42 C.F.R. pt. 457 (generally providing for federal grants to the States for these purposes). Since the mid-1990s, HHSC has primarily carried out these programs by procuring the services of managed care organizations to administer the provision of benefits to Medicaid and CHIP beneficiaries and to reimburse medical providers participating in those programs. 6.RR.154. STAR (State of Texas Access Reform) is what HHSC calls its partnership program with MCOs for the provision of Medicaid services. 12.RR.511.

The Executive Commissioner, as the head of HHSC under Texas Government Code section 523.0051, is statutorily charged with the exclusive authority to "plan and direct Medicaid, including the management of the Medicaid managed care system and the development, procurement, management, and monitoring of contracts

necessary to implement that system." Tex. Gov't Code § 532.0051. The Commissioner is similarly empowered by statute to manage the CHIP program and "coordinate the child health plan program with the Medicaid program." Tex. Health & Safety Code §§ 62.051(a), .053(3). Relevant here, the procurement process for the STAR and CHIP programs is governed by various standards articulated in chapters 533, 536,[1] and 2155 of the Government Code; chapter 62 of the Health & Safety Code; and title 1, chapter 391 of the Administrative Code. As part of its program to evaluate MCO performance, HHSC "develop[s] quality of care and cost-efficiency benchmarks, including benchmarks based on a managed care organization's performance with respect to reducing potentially preventable events and containing the growth rate of health care costs." Tex. Gov't Code § 536.052(b).

HHSC commences a procurement of MCO services by public notice of a Request for Proposal (RFP), which explains the services HHSC seeks to secure and invites qualifying organizations to respond. 1 Tex. Admin. Code § 391.209. When bidders respond to HHSC's RFP, they are on notice that their proposal is subject to public disclosure under the Texas Public Information Act. 9.RR.343-45. A prospective bidder may submit a pre-bid protest of the RFP itself if any of the RFP's requirements are inconsistent with state law. 1 Tex. Admin. Code § 391.303(b). Likewise, disappointed bidders may file a protest of the procurement. *Id.* § 391.301 (citing Tex.

---

[1] Chapters 533 and 536 have been recodified in chapters 540 and 543A, respectively. The versions in effect at the time of filing of this lawsuit are used for ease of reference without citation to the full session law enacting the now-repealed statute, as recommended by the Texas Greenbook. *Texas Rules of Form: The Greenbook* 11.1 (Texas Law Review Ass'n ed., 15th ed. 2022).

Gov't Code § 2155.076). But none of the statutory or regulatory provisions cited in this litigation authorizes a remedy of cancelling or enjoining the procurement for violations of any statutory requirement.

The current procurement followed years of internal reform and cross-agency collaboration with the State Comptroller of Public Accounts, the State Auditor's Office, HHSC's Office of the Inspector General, and HHSC's internal auditors, beginning in 2018. 9.RR.501. HHSC also gave potential bidders for the MCO procurement the opportunity to meet with agency staff and give feedback on how the solicitation would be administered. 9.RR.501. Mercer Health Benefits, LLC, a procurement consulting firm, also advised HHSC in developing and facilitating these reforms and the evaluation criteria for the MCO procurement. 6.RR.136; 12.RR.284. Even before the RFP was published, Plaintiffs and all other stakeholders were given multiple and substantial opportunities to influence the procurement.

## B. HHSC's request for proposals to provide managed care services on behalf of the State

After years of reform, input from throughout the State government, and feedback from managed-care stakeholders, HHSC initiated a procurement process and invited MCOs to bid for contracts to provide administration and beneficiary services through the STAR and CHIP programs. 9.RR.293-350. HHSC published the STAR & CHIP Managed Care Services Request for Proposals HHS0011152 on December 7, 2022. 9.RR.293. The RFP stated that HHSC would award contracts to qualified MCOs in one or more of the thirteen defined service areas (SAs) based on population density. 9.RR.321-22. Under the terms of this procurement, bidders agreed that

4

"HHSC shall make an award to the Respondent that, *in HHSC's sole determination*, provides the best value to the State of Texas as set out in this Solicitation." 9.RR.313 (emphasis added).

The RFP notified potential respondents that their proposals would "be evaluated in accordance with State law, including, but not limited to, applicable provisions of Chapters 533, 536, and 2155 of the Texas Government Code." 9.RR.313. HHSC formatted the procurement mindful of its overarching obligation to provide best the value to the State by developing "best value criteria," technical questions, and oral presentation scenarios to solicit the relevant information it needed under sections 533.002, 533.003(a)(1), 536.052, and 2155.144. Relevant here, the best value criteria and technical questions addressed historical quality performance of the RFP respondents. 6.RR.135. HHSC outlined these standards in both the RFP and HHSC's Statement of Work for the procurement. 5.RR.125; 9.RR.317, 520-24; 12.RR.284, 291-92.

Before the deadline for submissions, HHSC invited MCOs to attend a pre-proposal conference and submit questions about the RFP or point out possible errors or omissions in the RFP. 9.RR.303-04. If a respondent failed to raise a pre-solicitation objection to any error or defect in the RFP, the bidder was deemed to have waived the error or defect under the express terms of the RFP. 9.RR.303. Only Wellpoint protested these specifications before any bids were entered. Wellpoint.Mot.5. Wellpoint generally complained that "it appears that HHSC intends to award mandatory contracts pursuant to the RFP for both the STAR program . . . *and* the CHIP program

. . . in violation of the law and in an anti-competitive manner." 9.RR.360. The Commissioner denied Wellpoint's protest as to the solicitation specifications. 9.RR.360.

For over a year, HHSC evaluated the MCOs' responses before issuing the Notice of Intent to Award (NOIA) contracts to the winning bidders. 12.RR.283-96. As part of their response, MCOs were able to choose specific SAs and rank them according to preference and subject to the maximum number of MCOs that could be awarded a contract in each SA. 9.RR.315. HHSC's process included evaluating and scoring written responses to technical questions and inviting MCOs to make oral presentations. 12.RR.286-87. Eighteen bidders responded to the STAR & CHIP RFP, and evaluators reviewed the written responses to the technical questions before the oral presentations. 12.RR.286. All MCOs were deemed to be in the "Competitive Range" to be selected to move onto oral presentations, meaning there was a likelihood that they would be considered for the SAs they ranked. 12.RR.287-88. HHSC then evaluated the oral presentations based on the MCO's responses to four separate scenarios which covered the following topics: Oversight and coordination with subcontractors; Maternal mortality and morbidity; Coordination with Dental Maintenance Organizations; and Preventive care rates. 9.RR.318-19. HHSC certified each of the applicants as reasonably capable of fulfilling their proposals under section 533.0035 based on this comprehensive process. 12.RR.294.

The evaluation teams, which consisted of subject matter experts, reviewed all responses and assigned scores consistent with the published scoring guide. 12.RR.286. The evaluators trained extensively on how to score proposals and con-

ducted practice exercises to rehearse the scoring methodology. CR.3365 (Cook Children's live petition); 9.RR.427-71. Evaluators reviewed the proposals against the relevant criteria and then applied the consensus scoring method by holding Consensus Scoring Meetings to discuss the responses, assign scores, and to justify their decisions. 9.RR.299, 314. After evaluating all responses and determining final weighted scores, HHSC assigned MCOs to SAs by order of ranked preference. 9.RR.322-23; *e.g.*, CR.3162, 3166, 3172, 3177, 3178 (technical weighted scores based on best-value criteria and technical-question responses), 3288 (final weighted scores after oral presentations).

After evaluation of the bidders' offers, HHSC issued a NOIA identifying the MCOs to which it intended to award contracts in each of the state's service areas. During the procurement process, HHSC considered the past performance of all MCOs who recounted their past performance in their proposal response. 6.RR.177.

## II. Procedural Background

Once they were notified that they were not selected to provide MCO services in their preferred SAs, Plaintiffs filed bid protests against HHSC's procurement under 1 Tex. Admin. Code § 391.301; *see* 9.RR.520 (Cook Children's), 525 (Superior), 532 (Texas Children's), 540 (Wellpoint). Kay Molina, the Deputy Executive Commissioner for Procurement and Contract Services carefully considered the issues raised by the losing bidders and found that HHSC's procurement violated no statutory requirements. 9.RR.524. The disappointed bidders then appealed the determination of the protest to the Executive Commissioner, the only defendant in this suit. 1 Tex.

Admin. Code § 391.307(d); *e.g.* 9.RR.546. As the Commissioner testified, those appeals remain pending before HHSC:

"Q  And as part of that, you still need to determine for yourself –

"A  Yes, sir.

"Q  -- whether the State complied with the law?

"A  Yes, sir."

6.RR.133. The Commissioner testified that the contracts with Plaintiffs reached the end of their terms and, due to this litigation, she has been required to extend the current MCO contracts for the foreseeable future. 6.RR.145.

Before the bid protests could be resolved through the HHSC's administrative process, the MCOs each separately sued the Commissioner, alleging that she acted *ultra vires* in the procurement process. CR.3308-84 (Cook Children's live petition), 3510-3817 (Superior), 4231-4715 (Wellpoint), 4716-5835 (Texas Children's). The trial court consolidated the lawsuits, CR.2778, and conducted a four-day evidentiary hearing to determine whether it should temporarily enjoin the Commissioner from completing the procurement and whether it should dismiss the case pursuant to the Commissioner's plea to the jurisdiction. CR.5875. It then ordered that the Commissioner

> and all other persons or entities in active concert or participation with [her] shall refrain from awarding, signing, entering into, executing, implementing, or otherwise taking action to effectuate or perform any contracts resulting from or in connection with the STAR & CHIP RFP or to further the procurement or contracting processes for the STAR & CHIP RFP.

CR.5883. The Court ordered the same relief as to the STAR Kids RFP. CR.5883. For this injunction with multi-billion-dollar ramifications, the trial court set Plaintiffs' bond at $1,000. CR.5884. As of this filing, the entire statewide procurement process for STAR+, CHIP, and STAR Kids remains on hold pending the outcome of this litigation.

## STANDARD OF REVIEW

Texas Rule of Appellate Procedure 29.3 authorizes a court of appeals to "preserve the parties' rights until disposition of the appeal." Tex. R. App. P. 29.3. "A stay pending appeal is, of course, a kind of injunction, so the familiar considerations governing injunctive relief in other contexts will generally apply in this context as well." *In re State*, 711 S.W.3d 641, 645 (Tex. 2024) (orig. proceeding). "To begin with, an appellate court can hardly endeavor to preserve the parties' rights pending appeal without making a preliminary inquiry into what those rights are." *Id.* Consequently, "the likely merits of the parties' respective legal positions are always an important consideration when a court is asked to issue an order determining the parties' legal rights pending appeal." *Id.* "Another essential consideration . . . is the injury that will befall either party depending on the court's decision." *Id.* Thus, "[t]he equitable balancing of these harms is a required aspect of a court's effort to preserve the parties' rights pending appeal." *Id.*

## SUMMARY OF THE ARGUMENT

Disappointed bidders in a state procurement have no legally cognizable "rights" that could warrant protection under Rule 29.3, under which the Court analyzes the

9

likelihood that the party seeking the injunction will ultimately prevail and the existence of irreparable harm when balanced against the harm to the enjoined party. None of these factors favors Plaintiffs.

*First*, the Court should deny Rule 29.3 relief because Plaintiffs are unlikely to succeed on the merits of their claims. Plaintiffs seek to bypass the available bid-protest process housed within HHSC by asserting *ultra vires* claims founded upon an argument that the Commissioner *may* finalize a procurement that did not correctly score their proposals under cherry-picked statutory provisions. Thus, this challenge is unripe. Even if it were not, Plaintiffs lack any judicially enforceable right to an order directing a re-do of the procurement process. And even setting aside these issues, Plaintiffs' claims fail under longstanding *ultra vires* principles and are highly unlikely to succeed when scrutinized with any depth and when the statutes are read in context.

*Second*, Plaintiffs cannot satisfy the irreparable harm, status quo, and public-interest factors based upon the bare facts that their companies were not chosen for a contract and their current contracts are set to expire by their own terms. Courts have long recognized that, when it comes to procurement, those with the delegated authority to secure goods and services on behalf of the State may "determine those with whom it will deal." *Tex. Highway Comm'n v. El Paso Bldg. & Constr. Trades Council*, 234 S.W.2d 857, 860 (Tex. 1950). The harm that would result to a company that loses its contracts cannot form the basis for halting an entire statewide procurement process for years on end.

# ARGUMENT

## I. Plaintiffs Are Unlikely to Succeed on the Merits of Their Claims.

At the outset, the Court should deny Plaintiffs' motions because the trial court lacked subject-matter jurisdiction for reasons of ripeness and lack of a viable *ultra vires* claim. There is no dispute that HHSC and the Commissioner generally enjoy sovereign immunity from suit, which has not been waived here. Despite the trial court's cursory conclusions, Plaintiffs cannot support their claims that the Commissioner acted outside the law. Thus, Plaintiffs are unlikely to ultimately succeed on the merits of their *ultra vires* claim, or their claim that the procurement must be scrapped and begun again.

### A. Plaintiffs' claims are unripe and unexhausted.

The Court should deny the motions for temporary relief because the trial court lacked subject-matter jurisdiction over Plaintiffs' unripe and unexhausted claims. Ripeness "is a threshold issue that implicates subject matter jurisdiction," *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998), which as the party invoking the jurisdiction of the courts, the plaintiff must prove, *see Waco ISD v. Gibson*, 22 S.W.3d 849, 852 (Tex. 2000). "[L]ike standing, [ripeness] emphasizes the need for a concrete injury for a justiciable claim to be presented." *Patterson*, 971 S.W.2d at 442. But "[w]hile standing focuses on the issue of *who* may bring an action, ripeness focuses on *when* that action may be brought." *Gibson*, 22 S.W.3d at 851 (footnotes omitted).

11

Specifically, in evaluating ripeness, the Court must consider "whether, at the time a lawsuit is filed, the facts are sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Point Energy Partners Permian, LLC v. MRC Permian Co.*, 669 S.W.3d 796, 812 (Tex. 2023) (cleaned up). "If the plaintiff's claimed injury is based on 'hypothetical facts, or upon events that have not yet come to pass,' then the case is not ripe, and the court lacks subject matter jurisdiction." *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020) (quoting *Gibson*, 22 S.W.3d at 852). Courts that prematurely decide an unripe claim have violated constitutional limitations on rendering advisory opinions. *Gibson*, 22 S.W.3d at 852.

**1.** No party disputes that every Plaintiff has a pending bid protest, and that the Commissioner has yet to determine whether HHSC's procurement complied with all applicable procurement standards. The Commissioner's testimony, which Plaintiffs' counsel solicited, showed that no relevant injury "has occurred or is likely to occur." *See Point Energy*, 669 S.W.3d at 812:

"Q  And as part of that, you still need to determine for yourself –

"A  Yes, sir.

"Q  -- whether the State complied with the law?

"A  Yes, sir."

6.RR.133. The Commissioner also testified that "assuming the Court will allow me to move forward, I would then finish the appeals process, the review of the appeals, and make a decision, *one or the other*, on each of the individual appeals . . . . I would

12

move forward . . . . *Depending on how those appeals come out.*" 6.RR.132 (emphasis added).

But Plaintiffs didn't follow the legal process for their bid protests. Instead, they sought and received this improper injunction before that administrative process could even play out—Commissioner Young is enjoined from "further[ing] the procurement or contracting process for the STAR & CHIP RFP." CR.5883. Nor can she "proceed[] with the procurement of, issuing a notice of intent to award or awarding contracts under, or otherwise implementing results from the STAR Kids RFP." CR.5883.

More to the point, whether the Commissioner will proceed with the results from HHSC's procurement scoring or alter them in some way is far from certain: HHSC's history with MCO procurement demonstrates as much. Kay Molina testified that the procurement was altered in 2020 due to irregularities in scoring procedures, 5.RR.180, and the Court must presume that the Commissioner will consider these appeals in good faith in any event. *See Webster v. Comm'n for Law. Discipline*, 704 S.W.3d 478, 501 (Tex. 2024) (holding that state actors are entitled to a "presumption of regularity, good faith, and legality" when answering allegations of wrongdoing). Of course, here the Commissioner need not rely on this presumption—her uncontroverted testimony is that the signing of the contracts is contingent on how she decides the administrative appeals. 6.RR.132.

Every Plaintiff couches their request for relief in speculative, uncertain language that renders their claims nonjusticiable under ripeness principles. For starters, the

Children's Plans acknowledge (and Wellpoint adopts (at 14)) that they seek to "foreclose even the *possibility* of [the] unacceptable result" that may follow if they do not have an opportunity for new contracts. Children's Plans.Mot.18 (emphasis added). And Superior says (at 2), "If the Executive Commissioner authorizes HHSC to execute contracts based on the intended contract awards, her action *will be ultra vires*." (emphasis added).

These assertions lay bare the textbook ripeness problems plaguing Plaintiffs' *ultra vires* claims. By vaguely gesturing at what the Commissioner *may* do with their appeals, Plaintiffs have asserted "the occurrence of contingent future events that may not occur as anticipated, or may not occur at all." *Patterson*, 971 S.W.2d at 444. When a plaintiff alleges that an agency has incorrectly applied the law governing the subject of its dispute, that claim is not ripe if the plaintiff has not availed himself of the available recourse under that law. *E.g.*, *Riner v. City of Hunters Creek*, 403 S.W.3d 919, 923-24 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *cf. Marble Falls ISD v. Scott*, 275 S.W.3d 558, 567 (Tex. App.—Austin 2008, pet. denied) (APA challenges are not ripe while a motion for rehearing before the agency remains pending). In *Riner*, the court held that a plat owner's declaratory claims against the City asserting that it did not correctly construe ordinances governing lot sizes were not ripe because the landowner did not allow the zoning commission to properly consider his contentions regarding these ordinances and that the commission could still render his allegations moot through a variance or appeal to the board of adjustment. 403 S.W.3d at 924. That same logic applies here to Plaintiffs' bid protests—the Commissioner's uncontroverted testimony was that she has not made any determinations one way or

another about whether Plaintiffs' administrative appeals have any merit. 6.RR.132. Under these circumstances, no court has subject-matter jurisdiction because Plaintiffs' claims are not ripe.

**2.** For almost all the same reasons that their claims are unripe, the Court should dismiss them because Plaintiffs have not exhausted their available administrative remedies, as the Commissioner argued below. CR.2986; *see Hensley v. State Comm'n on Jud. Conduct*, 692 S.W.3d 184, 194 (Tex. 2024) (holding that when an available administrative remedy "may moot the claim . . . the claim is barred"). And that requirement applies not only to protests of the notice of intent to award, but to the solicitation Plaintiffs so adamantly insist the Commissioner unlawfully implemented. 1 Tex. Admin. Code § 391.305(a)(1). Plaintiffs acceded to the terms of the solicitation when they submitted bids without protest in the hope of being awarded new multi-billion-dollar contracts. Their failure to protest, and Wellpoint's decision to proceed with competing for the contracts despite its protest, renders their present claims barred. *See, e.g.*, *Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1255-56 (Fed. Cir. 2015) (barring claim when bidder fails to appeal decision regarding the solicitation terms).

Plaintiffs' invocation of *Smith v. Abbott*, 311 S.W.3d 62 (Tex. App.—Austin 2010, pet. denied), and the *ultra vires* doctrine as a panacea for these defects fails. That case involved claims for declaratory judgment that a state agency (there, the Attorney General) could not delegate its statutory authority to suspend drivers licenses to the State Office of Administrative Hearings because SOAH had no such statutory authority. *Id.* at 68-69. Unlike the Commissioner's authority to procure the

15

MCO contracts, which is not in dispute, *Smith* dealt with SOAH's statutory authority to finally adjudicate suspension disputes *at all* in light of statutes delegating that authority to the Attorney General. *Id.* at 81. *Smith* is thus inapposite.

## B. Plaintiffs lack a judicially enforceable right to compel the Commissioner to redo the procurement process.

Even if Plaintiffs could show that the Commissioner acted *ultra vires*—and they cannot, *see infra* at Part I.C—Plaintiffs still cannot prevail because they lack any judicially enforceable right to compel the Commissioner to redo the procurement process. Nothing in the statutes governing that process authorizes a court to order such relief. And any such remedy would be impermissibly retrospective and run afoul of the Commissioner's sovereign immunity.

### 1. The procurement statutes contain no "redo" remedy.

Even if the statutes governing the procurement process contain commands that must be followed, the question is whether the Legislature has provided a specific consequence that must result from the agency's inability to satisfy those commands. *In re Stetson Renewables Holdings, LLC*, 658 S.W.3d 292, 297 (Tex. 2022) (orig. proceeding). It has not.

When several remedial actions *could* form the basis for an appropriate response, it is for the Legislature to make such policy choices—not for the courts to judicially impose the consequence on the agency. *Id.* As the Supreme Court explained, "[t]he mere existence of so many different potential consequences of the failure to abide by a statutory requirement—particularly given that the legislature can freely choose among them—should generate judicial caution." *Id.* "Such choices are the proper

16

domain of the *legislature*." *Id.* But "[f]ashioning an extratextual judicial remedy against the executive branch . . . creates a serious risk that the courts will intrude into the prerogatives of *both* other branches." *Id.* And "the legislature's authority is at stake, too," because "it is primarily for the legislature to determine how far it is worth pressing to achieve compliance with its own statutory directives." *Id.*

In this case, no statute says that because of failure to meet statutory requirements, the procurement must be redone. The lack of a legislatively mandated judicial remedy is fatal to Plaintiffs' claims. *See Morath v. Kingsville ISD*, 710 S.W.3d 918, 925 (Tex. App.—15th Dist. 2025, no pet.). This Court recently applied this principle to hold that even if the Texas Education Commissioner violated a statutory requirement by failing to issue school ratings by statutory deadlines for school years in which COVID 19 hobbled public school operations, cancelling those ratings altogether, as the plaintiffs demanded, was not a necessary consequence flowing from shortfalls in the TEA Commissioner's statutory duties. *Id.* So too here. No statute Plaintiffs invoke mandates the unjustified and meritless disruption of the MCO procurement program they demand and have wrought on the State for several years.

To be sure, there are several potential remedies that the Legislature *could* have fashioned to address the Commissioner's purported violation of statutory requirements governing the procurement process: HHSC could "either redo something, fix something, or sign the contracts." 5.RR.180. In 2020, for example, the procurement was redone; the Legislature could have mandated such a remedy. It also could have provided for additional rights to losing bidders as has been done at the federal level under the Tucker Act. *See* 28 U.S.C. § 1491(b)(1); *Sys. Applications & Techs., Inc. v.*

*United States*, 691 F.3d 1374, 1380-81 (Fed. Cir. 2012). Or it could have allowed disappointed bidders to sue the Commissioner for defects in the procurement process, as it did for political-subdivision procurement. Tex. Loc. Gov't Code §§ 252.061, 262.033. If anything, that the Legislature has *not* chosen to allow similar suits challenging *state* procurements indicates the Legislature's intent to deny Plaintiffs' attempts at judicial intervention here. *See Fireman's Fund Cnty. Mut. Ins. Co. v. Hidi*, 13 S.W.3d 767, 769 (Tex. 2000) (per curiam) ("When the Legislature has employed a term in one section of a statute and excluded it in another, we presume that the Legislature had a reason for excluding it.").

The Legislature chose none of these options. And in the absence of such consequences in the statute, the Commissioner "enjoys the unrestricted power . . . to determine those with whom [she] will deal." *Tex. Highway Comm'n*, 234 S.W.2d at 860. This Court should not impose a judicially crafted one in the first instance. *See Stetson Renewables Holdings*, 658 S.W.3d at 297; *Kingsville ISD*, 710 S.W.3d at 925.

### 2. Redoing the procurement is fundamentally retrospective.

Plaintiffs' claims are premised on their assertion that the Commissioner acted *ultra vires* by creating an "unlawful procurement *process*." *E.g.*, Superior.Mot.2 (emphasis added). To the extent Plaintiffs allege that the Commissioner has committed *ultra vires* acts by authorizing a solicitation that was illegal, they seek an impermissible form of retrospective relief barred under *ultra vires* principles. *Ultra vires* relief requires an ongoing violation of a plaintiff's rights. *City of Austin v. Util. Assocs., Inc.*, 517 S.W.3d 300, 312-13 (Tex. App.—Austin 2017, pet. denied). But when Plaintiffs agreed to the terms of the RFP by submitting their proposals, they waived any claim

18

of an ongoing violation of their rights[2] not to be subjected to an unlawful process. 9.RR.303. It was at that point the nature of any relief the Court could have granted became retrospective for purposes of *ultra vires* law. *See Util. Assocs., Inc.*, 517 S.W.3d at 309 ("The third limitation [of an *ultra vires* suit] relates to the nature and effect of the remedy sought. The remedy must be prospective in nature – i.e., compelling legal compliance going forward, as opposed to awarding retrospective relief to remedy past violations.").

In *Utility Associates*, the Court declined to entertain an *ultra vires* suit that would "effectively [] undo a contract award previously approved by the Austin City Council, invalidate an already-executed contract between the City and Taser, reopen the previously concluded procurement process, and compel the City Defendants to re-award the contract to Utility instead." *Id.* at 312. Although there is not yet an executed contract, there is no question Plaintiffs seek to reopen the procurement process and start it over so they can get another bite at the apple. CR.3279. Thus, Plaintiffs' demand—at the insistence of their expert witness—that the Commissioner "redo the entire process" ignores their acquiescence in the terms of the RFP (until they found out they lost) and is entirely backward-looking. CR.3279. In other words, even if the trial court were correct to find that the RFP should have but does not consider MCOs' past performances, for example, the agency's intent to award the contracts is not the type of "ongoing violation" it can simply cease prospectively as

---

[2] This point assumes a losing bidder has a "right" for the purposes of contesting the Commissioner's actions as *ultra vires*, but for the reasons argued *supra* at Part I.B.1, Plaintiffs have no such right susceptible to judicial intervention in the first instance.

with a proper *ultra vires* claim. That the agency would have to go back to square one of the procurement process and change the RFP demonstrates that Plaintiffs seek prohibited retrospective relief.

HHSC's decisional process as to the RFP concluded when Wellpoint's pre-bid protest was overruled. 9.RR.547. Wellpoint (at 15) agrees that it cannot "seek cancellation of any procurements," but the rules established in the RFP, which require bidders to notify HHSC of defects in the RFP before bidding, *are* the procurement. Wellpoint's decision to proceed with the procurement irrevocably waived any claim seeking to retrospectively create a new procurement. *See Util. Assocs., Inc.*, 517 S.W.3d at 312. And the same is certainly true for the other Plaintiffs, who filed no pre-bid protests at all. 9.RR.303.

## C. The Commissioner did not act ultra vires, but instead within the limits of her broad authority and discretion.

Plaintiffs' *ultra vires* claim also fails on the merits. "To fall within [the] *ultra vires* exception [to sovereign immunity], a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). "An *ultra vires* claim based on actions taken 'without legal authority' has two fundamental components: (1) authority giving the official some (but not absolute) discretion to act and (2) conduct outside of that authority." *Hall v. McRaven*, 508 S.W.3d 232, 239 (Tex. 2017) (citing *Hous. Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 158 (Tex.

2016)). In deciding whether a government official has exceeded their available statutory authority, courts should take care not to reduce the *ultra vires* question to whether the officer simply made a mistake or "got it wrong" when the person is statutorily empowered to make that decision. *Util. Assocs., Inc.*, 517 S.W.3d at 310 (citing *Hall*, 508 S.W.3d at 232). Doing so by "requir[ing] nothing more than an identifiable mistake would not be a narrow exception to immunity: it would swallow immunity." *Hall*, 508 S.W.3d at 242-43.

To prove that the Commissioner acted without legal authority in carrying out a duty to interpret and apply the law, Plaintiffs must show that the Commissioner "exercised discretion 'without reference to or in conflict with the constraints of the law authorizing [her] to act.'" *Id.* at 242 (quoting *Hous. Belt*, 487 S.W.3d at 163). Plaintiffs' motions fall far short of showing they are likely to meet that burden.

Plaintiffs' motions for temporary relief fail to acknowledge the proper discretion that HHSC exercised in the procurement process, culminating in the notice of intent to award. In granting Plaintiffs' request for a temporary injunction below, the trial court listed thirteen bullet points with no corresponding factual findings and concluded that the Commissioner violated no less than sixteen different statutory and regulatory provisions and the due course provision of the Texas Constitution. CR.5877-78. Not one is supported by a plain reading of the statutory text or evidence adduced at the temporary-injunction hearing.

As outlined below, these alleged violations fall into three general categories: (i) statutory preference standards, *see* Tex. Gov't Code §§ 533.003(a)(1), .003(a)(3), .004(a)(2), 536.052(a), .052(d); *see also* Tex. Health & Safety Code § 62.155(c)(1);

(ii) disclosure and confidentiality obligations, *see* 1 Tex. Admin. Code §§ 391.101, .209, .307(d)(1); and (iii) other statutory considerations establishing guidelines and procedures that HHSC follows when screening, evaluating, and certifying candidates for the procurement, *see* Tex. Gov't Code §§ 533.002, 533.0035, 2155.144(c)-(d); Tex. Health & Safety Code §§ 62.051(e), .055, .155. Plaintiffs also successfully convinced the trial court to identify prohibitions and mandates lacking any basis in the statutes and then enter conclusory findings that the Commissioner violated them. But at bottom, the Commissioner acted well within the broad discretion the Legislature vested in her by each statute relied upon by Plaintiffs.

1. **The Commissioner acted well within her broad statutory discretion to assess which contracts provide the best value to the State.**

Under section 2155.144, the Legislature created a procurement process laden with discretion that is vested in the Commissioner. Plaintiffs' claim that HHSC did not consider the right factors fails under *ultra vires* law.

Section 2155.144, subdivision (d), provides a list of factors that HHSC "may consider" to the extent they are relevant to determining "best value to the agency," and which must be documented when considered. Tex. Gov't Code § 2155.144(c)-(d). But section 2155.144(d) does not require consideration of *every* enumerated factor—instead, it allows the Commissioner to determine when those factors are "relevant" to determining "best value"—a judgment that is entirely within her discretion. In turn, the Commissioner assesses "best value" by looking at, among other things, "the quality and reliability of . . . [and] total long-term cost to the agency of acquiring the vendor's goods or services," as well as "any other factor relevant to

22

determining the best value for the agency in the context of a particular acquisition." *Id.* § 2155.144(d)(3), (7), (11). This is a statutory scheme that vests "absolute discretion" in the Commissioner with respect to weighing and applying the factors. *Hall*, 508 S.W.3d at 241. It does not provide any basis for an *ultra vires* claim. *See id.*

Plaintiffs' argument about how HHSC considered relevant factors under section 2155.144 is wrong on the law and on the facts. For instance, the Children's Plans argue (at 35-36) that HHSC acknowledged past performance as a relevant factor for section 2155.144 purposes, in which case HHSC is required to document its consideration, yet they claim HHSC did not do so in this procurement. But at the outset, to the extent HHSC might look at past performance, it "*may consider . . .* indicators of probable vendor performance under the contract such as past vendor performance, the vendor's financial resources and ability to perform, the vendor's experience and responsibility, and the vendor's ability to provide reliable maintenance agreements." Tex. Gov't Code § 2155.144(d)(5) (emphasis added). There is no mandate to look to "past performance" in isolation, and the text and context of section 2155.144 instead evidence the Commissioner's absolute statutory discretion to disregard past performance altogether (though, as explained below, HHSC did not) in favor of indicators of future performance. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011).

Regardless, James Ramirez's testimony at the temporary-injunction hearing was that past performance *was* documented in the procurement file:

"Q. But there is no specific documentation showing the agency's consideration of relevant factors including past performance; correct?

23

"A.  Outside of the entirety of the procurement file, that is correct."

5.RR.227. Ramirez also testified that "if past performance was [in the response], it was considered." 5.RR.110. Thus, to the extent that past performance was a mandatory statutory requirement, HHSC considered it to the extent it deemed appropriate and to the extent the MCOs brought their past performance to the attention of evaluators. Positive past performance may result in more favorable treatment, or it could not. But that state of play cannot form the basis for *ultra vires* relief that Plaintiffs claim, because how the agency wants to weigh past performance in scoring the applicants is entirely within the Commissioner's absolute statutory discretion. *Hall*, 508 S.W.3d at 241.

Not only did HHSC consider past performance, but, by Plaintiffs' own admission, it also documented how it declined Mercer's recommendation to weigh past performance. 5.RR.181, 253; 9.RR.260; Children's Plans.Mot.35 ("HHSC inexplicably rejected its hired consultant's recommendation to assign 10% of a bidder's score to past performance."). Plaintiffs cannot succeed on an *ultra vires* claim to compel the Commissioner to weigh certain best-value criteria more favorably than others because these are questions requiring judgment and deliberation entirely within her statutory authority, *see Util. Assocs., Inc.*, 517 S.W.3d at 310, and she is immune from suits like this that seek to control state action. *See, e.g.*, *Tex. Logos*, 241 S.W.3d at 121-22 ("[A] declaratory claim that would be proper if asserted to compel the state to act within its statutory powers prospectively may nonetheless be barred by sovereign immunity to the extent it alleges past statutory violations that implicate

24

a right to money damages."). This Court should reject Plaintiffs' proposed sore-loser doctrine of state procurement law.

*   *   *

Plaintiffs' request to perpetuate the injunction is premised on its assertion that the Commissioner "did not implement [the statutes] at all." Children's Plans.Mot.33. But that contradicts the express terms of the RFP and the procedures HHSC and its evaluators followed, which every bidder signed onto when they submitted their proposals. 5.RR.125; 9.RR.313, 317, 520-24; 12.RR.284, 291-92. Here, the evidence conclusively shows HHSC's compliance with all applicable statutes that the trial court erroneously concluded the Commissioner violated.

### 2. The manner of giving statutory preferences is not specified in the statutes and is within HHSC's discretion.

Plaintiffs argue that HHSC did not give them certain statutorily required preferences in the protest process. *See, e.g.*, Superior.Mot.13 (citing Tex. Gov't Code § 533.003); *see also* Tex. Gov't Code §§ 533.004(a)(2), 536.052(a),(d). Considering the discretion granted HHSC in the statutes, however, it is evident that Plaintiffs actual complaint is that HHSC did not exercise its discretion in the way Plaintiffs would have liked, *i.e.*, by awarding contracts to them. That is not a proper basis for an *ultra vires* action.

### a. Plaintiffs lack standing to complain about the statutory preference provisions, which are inapplicable and waived.

As an initial matter, Plaintiffs lack standing to complain about the commissioner's application of the statutory-preference provisions. The trial court's order

25

does not find that any of the Plaintiffs were deprived a statutory preference over a winning MCO that it would have otherwise been entitled to. In that sense, they have no standing to assert these *ultra vires* claims because they cannot show that the Commissioner's alleged failure to apply a statutory preference caused them to be passed over in the procurement process. *See Elcon Enters., Inc. v. Wash. Metro. Area Transit Auth.*, 977 F.2d 1472, 1478 (D.C. Cir. 1992) ("Nor may courts set aside a procurement decision on the ground that the procuring agency potentially or actually violated applicable law in some trivial way—the violation must have been *clear and prejudicial*."). In other words, the losing bidders show no harm caused by HHSC's alleged failure to properly apply any statutory preference provision outlined above.

Moreover, as James Ramirez testified and as the RFP plainly states, HHSC wanted respondents to provide information required to "achieve the outcomes mandated in Texas Government Code Sections 533.002, 533.003(a)(1), 536.052, and 2155.144," several of the very same statutory provisions challenged in this lawsuit. 6.RR.99-100; 9.RR.317. If the MCOs had a problem with how HHSC was going to award preferences, they were obligated to raise their objections during HHSC's reforms, in the pre-solicitation meetings, or with a pre-bid protest. *See* 1 Tex. Admin. Code § 391.305(a)(1) (requiring a protest to be filed "no later than the date that responses to a solicitation are due, if the protest concerns the solicitation."). Their failure to do so deprives them of any grounds for challenging the Commissioner's actions now.

These circumstances are readily distinguishable from the Third Court's decision in *Wilson v. Community Health Choice Texas, Inc.*, where the MCO bidding on

26

the procurement was the only entity qualifying for a mandatory contract award under section 533.004(a). 607 S.W.3d 843, 847-48 (Tex. App.—Austin 2020, pet. denied). Here, no MCO has argued that it was the only entity qualifying for any of the statutory preferences it alleges the Commissioner has failed to apply, as was the case in *Wilson. Id.* The trial court's findings based on sections 533.003(a)(1) and 536.052(d) are not based on any finding of an incorrectly applied or deprived-of preference and it had no grounds to enjoin the Commissioner under these provisions. Accordingly, Plaintiffs have no likelihood of success on their *ultra vires* claims that the Commissioner failed to properly implement a statutory preference for one MCO over another.

In addition, the various preferences cannot override the statutory objective to use a procurement method "that provides the best value to the agency." Tex. Gov't Code § 2155.144(c). Indeed, section 2155.144(n) explicitly provides that "[t]o the extent of any conflict, this section prevails over any other state law relating to the procurement of goods and services," with limited exceptions not applicable here. Thus, even if another statutory section limited the agency's discretion by specifying the manner of applying preferences—which none of them do—the agency must still exercise its discretion and authority to follow a procurement method that provides the best value to the agency. Only if two bidders offer the same value would these preferences even need to come into play. *See* 1 Tex. Admin. Code § 391.201(d) ("In case of *tie bids* or proposals which cannot be resolved by application of *one or more purchase preferences*, an award shall be made by drawing of lots, tossing a coin, or drawing of names with two witnesses present." (emphases added)). Otherwise, the

27

preferences would conflict with best value, in which case the best value standard controls. *See* Tex. Gov't Code § 2155.144(n).

Finally, in the context of a procurement process, the preference statutes must be understood to be premised on receiving information from the bidding organization so that HHSC is able to determine whether or how the preference should be given. Plaintiffs point to no statute specifying that the agency is required to specifically ask for all information that would allow for preference to be determined. It makes sense to put the onus on bidders, who have every incentive to make their best case for why the State should contract with them. And even if the RFP should have requested preference-related information, a protest concerning the solicitation must be filed "no later than the date that responses to a solicitation are due." *See* 1 Tex. Admin. Code § 391.305(a)(1). Plaintiffs' participation in the solicitation without filing a pre-bid protest on those grounds not only fails to exhaust administrative remedies, but confirms that Plaintiffs are seeking retrospective relief, which cannot be awarded. *See supra* at Part I.B.2 (citing, *e.g.*, *Util. Assocs., Inc.*, 517 S.W.3d at 312-13).

### b. Plaintiffs' counterarguments lack merit.

As noted, none of the preference statutes relied on by Plaintiffs specifies the manner or degree of providing preference, and the Commissioner acted within her discretion in noticing an intent to award contracts to the entities selected through the procurement process. Plaintiffs' arguments to the contrary lack merit.

**i.** Superior argues HHSC did not "'give preference to organizations that have significant participation in the organization's provider network from each health care provider in the region who has traditionally provided care to Medicaid and charity

care patients' as required by Texas Government Code section 533.003."[3] Superior.Mot.13; *see* Children's Plans.Mot.38. The statute provides neither a specific manner of providing the preference nor a specific degree of preference that must be provided, leaving that to the discretion of the agency. The wide degree of discretion is particularly evident when considering other preferences and standards, including the prime directive to achieve best value for the State as required by Texas Government Code section 2155.144(c). Additional discretion is allowed in determining which organizations have "*significant* participation" in the provider network from "*each* healthcare provider *in the region* who has *traditionally* provided care to Medicaid and charity care patients." Tex. Gov't Code § 533.003(a)(1) (emphasis added).

An example helps to illustrate the discretion involved. For instance, if the Commissioner were to determine that an organization has "significant participation in the organization's provider network from each health care provider in the region who has traditionally provided care to Medicaid and charity care patients," Tex. Gov't Code § 533.003(a)(1), the agency could give preference to that organization by awarding the contract to that organization rather than another organization that is otherwise tied with respect to other criteria or overall scoring in the procurement. But where such a scenario does not come up in a specific procurement, the preference may not make a difference in which organization is awarded a contract, but that does not mean the agency did not follow the statute. It would simply reflect the agency's discretion in the manner and degree of giving the preference. There is no

---

[3] Tex. Gov't Code § 533.003(a) has been re-codified as § 540.0204.

*ultra vires* action for an MCO that prefers the agency weigh this preference more heavily than all other statutory considerations. *See Klumb v. Hous. Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 10-11 (Tex. 2015) (holding that governmental bodies do not act without authority when "the breadth of [their] authority" under governing statutes "is inescapable").

Here, the Commissioner ensured significant provider participation under section 533.003 through the best-value criteria and through the technical questions. Specifically, BVC 1.c would favor bidders who "[d]emonstrate[] engagement of Providers . . . in the Service Coordination Process," and BVC 2.b did the same for bidders who "promote access to Providers and Services, including addressing Provider shortages and barriers to care in specific areas of the State." 9.RR.317. BVC 3 would reward those who "[e]ncourage Providers to participate in the Medicaid program." 9.RR.317. Technical questions 6 and 9 specifically ask the bidder to explain its "Provider Network adequacy including developing Services and Providers where they are needed," and to "[d]escribe the Respondent's approach to developing, contracting, and managing a robust qualified and culturally competent Provider Network." 9.RR.327, 329. Any suggestion that HHSC did not consider provider participation or solicit information allowing MCOs to explain their entitlement to preference as required by section 533.003(a)(1) is untrue.

**ii.** Superior argues HHSC did not "give preference to organizations that have successfully implemented quality initiatives or meet quality of care and cost-efficiency benchmarks as required by Texas Government Code section 536.052(d)."[4] Superior.Mot.14-15; *see* Children's Plans.Mot.36-37. Like the preference in section 533.003, section 536.052 also provides HHSC with substantial discretion in implementing it.

Section 536.052(a) relates to quality initiatives and provides that HHSC "may allow" an MCO "increased flexibility to implement quality initiatives" in a managed-care plan. Section 536.052(b) relates to benchmarks and provides that HHSC "shall develop quality of care and cost-efficiency benchmarks." Section 536.052(d) relates to preferences in awarding contracts, and provides that HHSC "shall, in addition to considerations under Section 533.003 of this code and Section 62.155, Health and Safety Code, give preference" under one of two situations. HHSC can give a preference under this section to an organization that (1) "offers a managed care plan that successfully implements quality initiatives under Subsection (a) *as determined by the commission based on data or other evidence provided by the organization*," or (2) "meets quality of care and cost-efficiency benchmarks under Subsection (b)." Tex. Gov't Code § 536.052(d) (emphasis added). There is no dispute that benchmarks were not developed in time to be used in this procurement. 6.RR.44.

In the absence of benchmarks, HHSC determined to give preference based on quality initiatives implemented under section 536.052(a). 5.RR.224. As subsection

---

[4] Tex. Gov't Code § 536.052 has been re-codified as § 543A.0052.

(d) expressly provides, however, successful implementation of quality initiatives is "determined by the commission based on data or other evidence provided by the organization," which requires that the organization provide data or other evidence and then allows HHSC discretion in determining that a quality initiative was successfully implemented. Tex. Gov't Code § 536.052(d). A bidder that does not include such data or other evidence in its response has no room to complain that no preference was given, certainly when it chose not to protest the RFP.

Here, HHSC incorporated preferences for quality initiatives in the BVC and Technical Questions just like it did with section 533.003(a)(1). For instance, Technical Question 13 asked bidders to "[d]escribe the Respondent's Quality Improvement and performance evaluation strategies and initiatives specific to the STAR, CHIP, and HTW populations." 9.RR.330. Kay Molina's resolution of Cook Children Bid Protest, 9.RR.521, further demonstrates this, as HHSC relied on "data or other evidence provided by the organization," *i.e.*, the bid, in lieu of benchmark satisfaction in determining the applicability of preference.

**iii.** The Children's Plans argue (at 39) that HHSC did not consider different plans for different populations, as required by Texas Government Code section 533.003(a)(3), because "HHSC executives conceded that the procurement was conducted in a statewide manner." But whether the procurement is conducted in a statewide or by-region manner has no bearing on whether the Commissioner "consider[ed] the need to use different [MCOs] to meet the needs of different populations." Tex. Gov't Code § 533.003(a)(3). Plaintiffs' assertion on this point is a non sequitur. In any event, HHSC has obviously considered a diverse range of companies

in this procurement, considered their preference as to which service area they prefer, and has noticed an intent to award contracts to different organizations in different service areas. 9.RR.322-23; e.g., CR.3162, 3166, 3172, 3177, 3178 (technical weighted scores based on best-value criteria and technical-question responses), 3288 (final weighted scores after oral presentations).

**iv.** Superior argues the intended contracts "will violate Texas Government Code section 533.004, as amended in 2021, because the Executive Commissioner proposes to award mandatory contracts without statutorily required considerations, including considerations regarding provider networks in the region under Texas Government Code section 533.003(a)(1), as required by Texas Government Code section 533.004(a)." Superior.Mot.17. Plaintiffs' argument here fails for the same reasons discussed *supra* at Part I.C.2, explaining how the procurement is consistent with section 533.003(a)(1). Plaintiffs assert only that the agency did not *consider* section 533.003(a)(1), and it is unclear whether Plaintiffs would interpret these statutes together such that a preference under section 533.003(a)(1) must always override the mandatory nature of contracts under section 533.004.

Because HHSC considered the preference of section 533.003(a)(1), consistent with its discretion in determining the manner and degree of giving such a preference, Plaintiffs cannot show that the Commissioner exceeded her legal authority in awarding mandatory contracts under section 533.004. In other words, there is no question the Commissioner has the *authority* to choose a winner—Plaintiffs' quibbling with the *weight* HHSC gave various factors provides no basis for overcoming the Commissioner's entitlement to sovereign immunity and dismissal of these suits. *See*

*Young v. Tex. Parks & Wildlife Dep't*, No. 15-24-00052-CV, 2025 WL 1200947, at *7 (Tex. App.—15th Dist. Apr. 24, 2025, no pet. h.) (mem. op.) ("[*U*]*ltra vires* claims 'depend on the scope of the state official's authority,' which we evaluate against the relevant statutory or other legal authorities, not a plaintiff's *ipse dixit*.") (quoting *Honors Academy, Inc. v. TEA*, 555 S.W.3d 54, 68 (Tex. 2018)).

\* \* \*

Plaintiffs' recitation of facts regarding HHSC's application of statutory preferences is notable for what it omits. For instance, the Children's Plans cite James Ramirez's testimony for the proposition that HHSC did not apply required statutory preferences. Children's Plans.Mot.9. But a closer review of the transcript shows that counsel for the Plaintiffs did little more than read Ramirez the statutes and solicit his agreement that they generally imposed obligations to award qualifying preferred MCOs. *See* 5.RR.97, 221-28, 230-33, 254-56. In the first place, Ramirez's legal conclusions are not evidence—full stop. In any event, the transcripts do not say that the procurement failed to award a specific MCO with statutory preference that the MCO showed itself entitled to. That is not evidence that HHSC failed to take required preferences into account; it is at most evidence that the losing bidders failed to advocate for their supposed right to preferential treatment when they submitted their proposal. The Commissioner does not act *ultra vires* by awarding contracts to MCOs who do, and the losing bidders have no right to the extraordinary remedy of injunctive relief mandating a "redo." *See* CR.3279 (In the opinion of Plaintiffs' witness Jeri Somers, "[t]he only remedy that can cure the impact of the premature disclosure is to cancel the Notice of Intent to award and to redo the entire process.").

Under Plaintiffs' theory, which is supported by no legal authority in Texas, the *ultra vires* doctrine requires HHSC to hold every RFP respondents' hand through the procurement process, instructing them on every statutory preference to which they may be entitled. *See* Children's Plans.Mot.34. None of the governing statutes requires this absurd result and imposing a requirement beyond what the statutes require is outside the province of the judiciary. *Tex. Highway Comm'n*, 234 S.W.2d at 860 ("Like private individuals and businesses, the Government enjoys the unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases.") (quoting *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 127 (1940)); *see also In re Tex. Dep't of Fam. & Protective Servs.*, 696 S.W.3d 240, 243–44 (Tex. App.—San Antonio 2024, orig. proceeding) ("We have held that when the trial court orders the Department to enter into specific contracts to provide specific services to the children in the Department's care, it violates the Separation of Powers Clause of the Texas Constitution.").

HHSC and the beneficiaries of these services expect MCOs to be experts in both federal and state Medicaid laws, and the agency must award these contracts on a *competitive* basis. *E.g.*, Tex. Health & Safety Code § 62.055. If an MCO cannot figure out how to effectively advocate for itself under those provisions during the procurement process, perhaps it should not be serving the people of Texas. And under no credible legal theory can the Commissioner be said to have acted *ultra vires* by making that conclusion.

35

### 3. Disclosure of materials, as required under PIA, does not require the procurement to be redone.

The trial court concluded that HHSC's response to a Public Information Act (PIA) request seeking the Plaintiffs redacted proposals violated 1 Tex. Admin. Code §§ 391.101 and 391.209. CR.5877. Section 391.101 states the purpose of HHSC purchase rules generally, and section 391.209 identifies the procedures governing requests for proposals. But neither contains any mandate to refuse to provide public information under PIA when HHSC receives a valid request. To the contrary, Plaintiffs participated in the procurement with the full understanding that their proposals were subject to public disclosure. *See* 9.RR.343-45 (citing Tex. Gov't Code ch. 552). The PIA generally requires that public information, which is "information that is written, produced, collected, assembled, or maintained under a law or ordinance or in connection with the transaction of official business . . . by a governmental body," be produced upon request by any member of the public unless the information is confidential by law or otherwise excepted from disclosure. Tex. Gov't Code § 552.002, .221, .301-.302.

Despite this, Plaintiffs appear to fault HHSC for disclosing redacted copies of proposals under the PIA as an "unlawful disclosure," because of 34 Tex. Admin. Code § 20.208(d)(3)—a rule that did not form the basis for the trial court's order, CR.5877. Children's Plans.Mot.39-40. This rule from the Comptroller of Public Accounts governs state procurements utilizing the competitive sealed proposals procurement method and states: "A state agency may not disclose information derived from proposals or discussions with a respondent to any competing respondent prior

to award or cancellation of the solicitation." 34 Tex. Admin. Code § 20.208(d)(3). But, even if this rule governed this procurement—which is unclear—a regulatory provision cannot trump the PIA. *Cf. Jackson v. SOAH*, 351 S.W.3d 290, 298 (Tex. 2011) (holding that court rule of procedure governing confidentiality of documents must give way to PIA). Moreover, the Children's Plans cite no record evidence that HHSC "disclosed information *derived from* proposals or discussions with" any Plaintiff prior to an award. *Id.* (emphasis added). That obligation is different in kind than HHSC's obligations under PIA because it doesn't govern the proposals themselves and is irrelevant to the trial court's order in any event.

Respondents to the RFP agreed to a three-page procedure for Public Information Act disclosures, 9.RR.343-45, and any expectation they had in secrecy does not override the legal requirement to provide information to any person requesting the proposal response under HHSC's legal obligations to observe the Public Information Act. Even if HHSC mistakenly responded to the PIA request, this was not "an interpretation of the official's enabling authority," but a discretionary determination as to the applicability of PIA. *Hall*, 508 S.W.3d at 242. "When the ultimate and unrestrained objective of an official's duty is to interpret collateral law, a misinterpretation is not overstepping such authority; it is a compliant action even if ultimately erroneous." *Id.* "Indeed, an *ultra vires* doctrine that requires nothing more than an identifiable mistake would not be a narrow exception to immunity: it would swallow immunity." *Id.* at 242-43.

Moreover, as Kay Molina's resolution of Superior's bid protest shows, HHSC investigated and considered whether the disclosure of proposals pursuant to the

Texas Public Information Act had any effect on the solicitation and determined Superior, and others', assertions lacked any factual basis—nobody could show *how* their score could have changed. 9.RR.531. Plaintiffs' *ipse dixit* on this point, again, does not require a do-over of the multi-billion-dollar procurement.

### 4. The trial court justified the temporary injunction with statutory mandates that do not exist.

Beyond misconceiving the discretionary nature of the existing statutory requirements, the trial court also invented several of its own that HHSC purportedly violated.

**a.** Superior argues that "the Executive Commissioner intends to award contracts that do not comply with HHSC's obligation under Texas Government Code section 533.0035 to 'evaluate and certify that the organization is reasonably able to fulfill the terms of the contract, including all requirements of applicable federal and state law' before awarding a contract to an MCO." Superior.Mot.17; *see* Children's Plans.Mot. 39.[5] Despite the certification made by HHSC under the statute, Superior contends HHSC did not "certify" but rather relied on self-certification made by respondents without meaningful evaluation. Superior.Mot.17.

This purported statutory mandate appears nowhere in the procurement statutes. Section 533.0035 does not contain a supplementary investigation mandate in addition to the procurement process the trial court acknowledges HHSC used. The

---

[5] Wellpoint adopts the arguments of Superior and the Children's Plans. Wellpoint.Mot.16.

statute does not specify what is to be evaluated or the extent to which it is to be evaluated, leaving this to the agency's discretion. It is within the discretion of HHSC to evaluate the bidders' responses and their responses to the certification questionnaire, 5.RR.275, to make the statutorily required certification. Plaintiffs are not able to specify what the Commissioner should have done that was not done, or point to any limit on the Commissioner's discretion imposed by the statute that was exceeded. Simply labeling HHSC's certification a "self-certification" because it considered the bidders' responses fails to show that the certification made by HHSC was done outside of its authority granted by statute.

Plaintiffs' assertion that HHSC did not independently evaluate bidders' certifications is also not accurate. The testimony the Children's Plans cite (at 39), for example, states that bidders' proposals were evaluated using a "four corners" approach, meaning that HHSC is not statutorily required to conduct outside investigation into the bidders in addition to their statutory duty to evaluate their proposals in response to the RFP. 5.RR.272-74. Nothing in the statute prohibits the agency from exercising its discretion in this manner.

**b.** The statements of statutory purpose found in section 533.002 and sections 391.101 and 391.209 do not impose a duty on the Commissioner to do anything other than to "implement the Medicaid managed care program by contracting with managed care organizations in a manner that, *to the extent possible* . . . promote[s] continuity of care [and] . . . reduces administrative and other nonfinancial barriers for recipients in obtaining health care services." Tex. Gov't Code § 533.002(1)(B), (6) (emphasis added). The Commissioner has done precisely this through designing the

managed care program as a whole, having different product lines, and requiring contractual terms that address these factors. The Children's Plans (at 39-40) briefly address section 391.101 and 391.209 to argue that HHSC was not authorized to disclose proposals under the Public Information Act, but those arguments fail for reasons stated *supra* at Part I.C.3. And section 533.002 provides wide discretionary safe harbor with the language "to the extent possible." *See* Tex. Gov't Code § 533.002(1)(B), (6). Cook Children's arguments on these points fail for reasons explained in more depth below and *infra* at Part II.B.

**c.** Plaintiffs' assertion that CHIP and STAR services cannot be procured in the same RFP also lacks any basis in the governing statutes. CR.5878. The trial court concluded that "Defendant's intended contract awards will unlawfully award mandatory CHIP contracts to MCOs to which Defendant intends to award mandatory STAR contracts in violation of Texas Health and Safety Code §§ 62.055 and 62.155." CR.5878. Any reader would search in vain to locate such a prohibition in these statutes because this purported mandate was created of whole cloth. Contrary to the trial court's injunction and Plaintiffs' conclusory argument on this point, the plain statutory text provides that the Commissioner "may give preference to a person who provides similar coverage under the Medicaid program." Tex. Health & Safety Code § 62.155(c)(1). If she were to recognize a CHIP MCO for satisfying statutory preferences accorded to Medicaid MCOs, she would be squarely within this statutory authority to award the contract on that basis. *See id.*

In any event, HHSC's decision to procure the CHIP piece with the mandatory STAR piece is consistent with the best-value scoring to award the CHIP contracts

competitively, and, more importantly, consistent with the Commissioner's obligations to "coordinate the child health plan program with the Medicaid program." Tex. Health & Safety Code §§ 62.051(a), .053(3); 9.RR.528-29. Further, HHSC considered continuity of care through this choice because it would provide "[t]he least disruption in the delivery of Covered Services to Members." 9.RR.528 (citing Tex. Health & Safety Code § 62.051(b); Tex. Gov't Code § 2155.144(d)(11)).

**d.** Among the other legal obligations Plaintiffs create out of whole cloth is the requirement to always agree with the agency's hired consultant. *See* Children's Plans.Mot.35. Obviously, that is a classic charge that the agency "got it wrong" in that it had statutory discretion to take the action but acted improvidently, which courts routinely refuse to entertain under the *ultra vires* doctrine. *Util. Assocs., Inc.*, 517 S.W.3d at 310 (citing *Hall*, 508 S.W.3d at 232). This Court should do likewise and refuse to perpetuate the trial court's baseless injunction.

## II. The Balance of Equities Favors the Commissioner.

"A stay pending appeal is, of course, a kind of injunction, so the familiar considerations governing injunctive relief in other contexts will generally apply in [the Rule 29.3] context as well." *In re State*, 711 S.W.3d 641, 645 (Tex. 2024) (orig. proceeding). In deciding a Rule 29.3 request, the Texas Supreme Court has made clear that "the likely merits of the parties' respective legal positions are always an important consideration when a court is asked to issue an order determining the parties' legal rights pending appeal." *Id.* Further, "[t]here is little justice in allowing a party who will very likely lose on the merits to interfere with the legal rights of the opposing party during the appeal." *Id.*

41

The Court also considers "the injury that will befall either party depending on the court's decision," and "the harm that other parties or the public will suffer if relief is granted." *Id.* The latter consideration is especially important here, where Plaintiffs' interference has thrown the provision of healthcare benefits for over three million Texans into disarray.

Here, it would be unjust to interfere with the Commissioner's right to finalize the contracts and proceed with HHSC's statutorily established mission pending appeal because the Commissioner is very likely to succeed on the merits. Further, the "equitable balancing of th[e] harms" favors the State and, therefore, the denial of Rule 29.3 relief. *Id.* Not only do the consequences of a stay to HHSC outweigh those faced by Plaintiffs, but the public interest is best served by denying a stay. Finally, to the extent any status quo considerations are useful, they counsel in favor of denying a stay.

### A. The State's interest in its sovereign and discretionary right to procure appropriate services for the People outweighs the consequences to a losing bidder.

When considering an application for temporary injunction, courts must "balance[] the equities" between the parties. *Univ. Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 578 (Tex. App.—Austin 2000, no pet.) (citation omitted). The court must also look to the "resulting conveniences and hardships." *Id.* In this case, the inconvenience, hardship, and harm the Commissioner (and thereby, the State) would suffer tilts the equities decidedly in her favor.

### 1. The State would suffer harm to its sovereignty and public resources from a stay.

As the "Supreme Court has repeatedly reaffirmed," the State has "an 'intrinsic right to . . . enforce its own laws.'" *State ex rel. Off. of Att'y Gen. of Tex. v. City of San Marcos*, 714 S.W.3d 224, 245 (Tex. App.—15th Dist. 2025, pet. filed) (quoting *State v. Hollins*, 620 S.W.3d 400, 410 (Tex. 2020)). So too here does the State have a significant interest in seeing its procurement laws carried out. The Legislature clearly enacted its intent that HHSC and its Commissioner operate the critical programs STAR and CHIP. *E.g.*, Tex. Gov't Code § 532.0051; Tex. Health & Safety Code §§ 62.051(a), .053(3). That includes the regular procurement of services from managed care organizations to ensure that the State is receiving the most efficient and effective services. *See* Tex. Gov't Code § 536.052(b). While the Legislature provided guidance in making that determination, HHSC was delegated wide discretion over the process. *See* Part.I.C. To disrupt that process would harm the State's sovereign interest in seeing its agencies operate and its finances be administered according to the statutory directives the Legislature enacted.

There is good reason the Legislature has set up this process and left it to HHSC's discretion. The procurements of services for the programs at issue is part of a carefully devised plan that took years of reform, input from across the government, and numerous pre-bid opportunities for collaboration with Plaintiffs themselves, as explained *supra* at p. 4. Disruption to that plan would have serious consequences to the State, which carefully designed the current plan to transition and protect continuity of care. As Plaintiffs acknowledge, this procurement was years in the making and

43

"HHSC spent significant time and State resources" to bring it about. Children's Plans.Mot.9. The trial court caused a grave inequity by enjoining that process only *after* Plaintiffs learned their contracts would not be renewed, and this Court should not perpetuate it.

To upset this carefully laid plan would also contravene the Legislature's intent that HHSC consider how to best serve Medicaid recipients. As Children's Plans note (at 24), there is a rigorous and lengthy readiness period to allow for and ensure that there is a streamlined transition process in furtherance of providing continuity of care and reducing other nonfinancial barriers for recipients where possible, as the Legislature has instructed. Tex. Gov't Code § 533.002(1)(B), (6). An injunction affecting an entire procurement and implementation process would cause disruption to this thoughtful plan and jeopardize not just continuity of care but the ability to effectively manage the programs.

A stay would interfere with the implementation of the STAR and CHIP program statewide, not just for the regions where Plaintiffs believe they deserve contracts. Plaintiffs claim to be concerned for 1.5 million patients who will change health plans, but these programs are critical for HHSC to provide care to over three million patients and the Legislature intended for them to be reprocured. These operations involve billions of dollars and are not only a large percentage of HHSC's budget, but of the entire State budget. The disruption to these programs is also impacting other procurements in this space that have been in process for years.

Despite the painstaking procedure it created to ensure a fair and competitive process, Plaintiffs wanted HHSC to put its thumb on the scale and award them contracts

44

simply because they had previously received contracts in certain service areas. Plaintiffs should not be allowed to upset the State's discretionary functions because they did not get their way.

### 2. Plaintiffs have proven no harm resulting from the procurement, and any harm they could possibly prove would be neither ripe nor irreparable.

In contrast to the significant harms the State would suffer from a stay—to its sovereignty and resources—there is no evidence that Plaintiffs would suffer harm. That is, Plaintiffs have not shown any alleged adverse outcomes they wouldn't otherwise face but for the alleged deficiencies in the procurement. Plaintiffs have provided no evidence they would have been entitled to a contract under a procurement they would find acceptable. In the absence of evidence that Plaintiffs would have received a contract under a "proper" procurement, assuming *arguendo* there was some defect in the procurement, Plaintiffs face nothing but the natural expiration of their current contracts. The mutually agreed upon end of a contractual relationship *cannot* be a harm for purposes of injunctive relief. *See, e.g.*, *Turner v. Joshua ISD*, 583 S.W.2d 939, 942 (Tex. App.—Waco 1979, no pet.) (finding the appellant had no right to a renewed contract after his contract ended by its own terms). Plaintiffs never had a right to a new contract and have not shown they would have received one but for an abuse of discretion by the Commissioner. Thus, Plaintiffs "lack a legally cognizable interest" because "the court's action on the merits cannot affect [Plaintiffs'] rights or interests." *Heckman v. Williamson County*, 369 S.W.3d 137, 162 (Tex. 2012).

Further, any harms Plaintiffs might be able to prove would not be ripe. *Supra* at Part I.A. The Commissioner is the only defendant that Plaintiffs allege is acting *ultra vires*, yet she testified that she still needs to determine for herself whether the State complied with the law. 6.RR.133. Without having made such a decision, the Commissioner could resolve Plaintiffs' pending bid protests in their favor and refuse to finalize the results of the procurement. Therefore, "the facts are [not] sufficiently developed so that an injury has occurred or is likely to occur," for any harm to be ripe, "rather than being contingent or remote." *Point Energy Partners Permian*, 669 S.W.3d at 812.

What is more, "the applicant for a stay pending appeal should be expected to show that he will suffer *irreparable* harm if relief is not granted." *In re State*, 711 S.W.3d at 645 (emphasis added). Plaintiffs complain about contractual rights, which "can rarely establish an irreparable injury." *N. Cypress Med. Ctr. Operating Co., Ltd. v. St. Laurent*, 296 S.W.3d 171, 175 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Plaintiffs' arguments merely allege the harm they face would be significant, not irreparable. In contrast, it is the harm to Texas's sovereignty and its ability to provide the most timely and effective care to STAR and CHIP beneficiaries that cannot be measured by any pecuniary standard and is therefore irreparable.

Texas law is clear: "fear and apprehension of injury are not sufficient to support a temporary injunction." *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 227 (Tex. App.—Fort Worth 2009, pet. denied). Plaintiffs' assertions that their failure to win new contracts poses an existential threat to their continued existence is not only premature, because the Commissioner has not definitively determined the

procurement complied with the law, but it is not supported by evidence. It therefore cannot sustain a finding of irreparable harm.

### 3. If Plaintiffs are successful, any losing bidder would be able to halt important government functions whenever they are dissatisfied.

Any winner of a previous procurement who loses a later procurement can allege general harms to its business such as a loss of revenue and the need to lay off employees. If such allegations were legally sufficient to obtain an injunction, the State would be enjoined from moving forward with its business any time a current State contractor makes a losing bid to continue its services. *See Elcon Enters., Inc.*, 977 F.2d at 1479 (opining that courts cannot become "the forum for all manner of objections to procurement decisions") (quoting *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1302 (D.C. Cir. 1971)). That is an especially unacceptable outcome where, as here, the State actor has used statutory authority to determine such business furthers the public interest. Opening the floodgates to such spurious claims undermines a core purpose of sovereign immunity—to guard against the expenditures that would arise from the government's having to defend lawsuits and pay judgments, which diverts funds from the execution of normal State business to paying the costs of court disputes with losing bidders. *See Nettles v. GTECH Corp.*, 606 S.W.3d 726, 737 (Tex. 2020). Elevating Plaintiffs' contractual incumbency in this manner threatens the very structure of state government itself.

Moreover, equity disfavors those who sleep on their rights. One of the canonical equitable "principle[s] is that equity aids the diligent and not those who slumber on their rights." *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993) (citation

omitted). Plaintiffs' complaints all turn on the procurement process itself. However, rather than sue early in the process or challenge the terms of the RFP they agreed to with a required pre-bid protest, they waited to see how the procurement would turn out. Only after receiving an unfavorable decision did Plaintiffs bring suit. The Court should not allow dissatisfied bidders to control state action as Plaintiffs attempt here.

## B. The public interest in efficient provision of Medicaid services vastly outweighs the corporate interests of the MCOs.

"[W]here 'the State is the appealing party,' as it is here, 'its interest and harm merge with the public.'" *Vote.Org v. Callanen*, 39 F.4th 297, 309 (5th Cir. 2022) (citation omitted). Therefore, the public interest counsels in favor of denying a stay to avoid harm to the State's sovereignty and public finances.

The Court should reject Plaintiffs' attempt to equate their nonexistent contract rights with the rights of beneficiaries. Plaintiffs argue (Superior.Mot.9) that, because they were not selected to provide care, "HHSC's procurement of Medicaid and CHIP managed care contracts will negatively impact more than 1.5 million" care recipients. *See* Children's Plans.Mot.26 ("[T]he Children's Plans [are] qualitatively different from other MCOs."); Wellpoint.Mot.19 ("[B]eneficiaries will also lose any meaningful choice of MCOs when the Commissioner replaces proven high-performing vendors like Wellpoint with unqualified or underqualified MCOs.").

The discretion to determine which contracts for which managed care organizations best serve the public interest, however, is vested solely in HHSC. Tex. Gov't Code § 2155.144(c); *see* Part.I.C. Only HHSC can determine which contracts will provide the State with the most efficient and effective services. HHSC made that

decision, which is embodied in the NOIA. A judicial determination to the contrary would violate the separation of powers by "interfering with the policymaking responsibilities of other branches of government and seeking to control their choices regarding the use of public funds." *Nettles*, 606 S.W.3d at 739. Therefore, the public interest counsels against extending Plaintiffs' contracts, which have been deemed less preferable than the winning bidders under HHSC's thoughtful scrutiny, and in favor of allowing HHSC to proceed with the finalization of new contracts that it deems to be better for the State and the beneficiaries.

Plaintiffs also argue (Children's Plans.Mot.23) that "forcing Medicaid beneficiaries to change providers has negative consequences." *See* Superior.Mot.26-27; Wellpoint.Mot.19. But this procurement is about middle-man *plans*, not providers. Beneficiaries will have to change plans any time the winner of a previous procurement loses in a later procurement. And beneficiaries may choose to switch plans any time during the term of the contract. Once again, contractors cannot use incumbency as a shield against competition. Otherwise, any incumbent contractor will be able to disrupt important government functions whenever it loses a bid to renew its contract. Regardless, changing plans here is not a negative, as Commissioner Young testified, when it's necessary to ensure beneficiaries get the health care they need. 6.RR.142-43. There can be no categorical, inflexible presumption that changing the plan for any reason will always fail to be in the best interests of the beneficiary. Beneficiaries will move to the plans that HHSC has determined are superior. And the question of who gets to decide what plans serve them best cannot be made by the MCOs for

themselves—it is a question that must be resolved through the procurement process HHSC and many others in the State government spent years implementing.

Plaintiffs' argument (at Children's Plans.Mot.38-39; Superior.Mot.19) that HHSC has not considered, as required by law, continuity of care for beneficiaries who will have to change plans is not true. As Children's Plans concede (at 24), HHSC has established "laudatory" rules to safeguard continuity of care. These safeguards include contract provisions requiring that new plans cover care by existing providers for up to ninety days and honor prior authorizations for a set period of time. Still, Children's Plans argues (at 24) these safeguards are insufficient because sometimes some information may not timely transfer between plans. This again would mean that any time a new managed care organization wins a procurement, the old organization may prevent the contract from going forward because continuity of care may not be perfectly protected. Besides, continuity of care is among at least a half-dozen other statutorily listed goals which HHSC must consider "to the extent possible" when implementing Medicaid programs. Tex. Gov't Code 533.002(1)(B), (6). How these various goals balance out is within HHSC's sole discretion. In addition, as Plaintiffs themselves acknowledge, provider networks likely will naturally realign to provide continuity of care for patients even under a new plan. *See, e.g.*, Superior.Mot.21 (complaining of "loss of providers participating in Superior's network because of the uncertainty and lack of leverage in provider negotiations").

Therefore, because harms to the State are against the public interest, and because HHSC has the sole discretion to decide which contracts are in the public interest, the Court should deny the request for a stay.

## C. To the extent they are relevant, status quo considerations counsel against granting a stay.

As the Supreme Court recently explained, discussing "preservation of the status quo" "offer[s] little help to" courts because "debates about how to define the status quo can descend quickly into lawyerly word-play." *In re State*, 711 S.W.3d at 644. Rather, it is more useful to analyze Rule 29.3 motions using the "familiar considerations governing injunctive relief," such as likelihood of success on the merits and the balance of harms. *Id.* at 645. Thus, Plaintiffs' discussion (Children's Plans.Mot.15-16; Superior.Mot.31-33; Wellpoint.Mot.20-21) of the status quo is not particularly probative. It is also wrong.

One traditional purpose of a temporary injunction has been "to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). The status quo is "the last, actual, peaceable, non-contested status which preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004). In this case, there is no status quo to preserve, because the last uncontested status is, at the latest, the moment before the Commissioner issued her notice of intent to award STAR and CHIP contracts. Plaintiffs had not yet sued, only doing so after the NOIA was issued. The "status quo" at present is that Plaintiffs were not included in the NOIA, while the winning bidders were. Plaintiffs' request for injunction would detrimentally change that state of things, including for the State and the winning bidders.

Arguably, the last uncontested status is before the procurement itself, since the procurement was an act by HHSC that Plaintiffs now contest. In fact, Wellpoint protested the RFP before any bids were even entered. Wellpoint.Mot.5.

To return to either possible status quo would require retrospective relief—either undoing the NOIA or undoing the entire procurement. Of course, such relief is barred by sovereign immunity. *See* Parts.I.B, I.C. But such uncertainty about the status quo illustrates why discussing "preservation of the status quo" "offer[s] little help to" courts. *In re State*, 711 S.W.3d at 644.

The status quo cannot be, as Plaintiffs suggest, a limbo between the procurement and the execution of new contracts, which Plaintiffs then argue necessitates extensions to their contracts pending appeal because of the natural expiration of the old contracts. The General Appropriations Act for the 2024-25 Biennium forecloses that possibility. Act of May 29, 2023, 88th Leg., R.S., ch. 1170, § 1, art. IX, sec. 17.09(e), 2023 Tex. Gen. Laws 3573, 4511. It states that "[i]t is the intent of the Legislature that agencies and institutions minimize the use of extensions that extend a contract beyond the base term and any optional extensions provided in a contract." *Id.* This clearly shows that the Legislature considers contract extensions for the State's multi-billion-dollar Medicaid and CHIP procurement to be against the public interest. When the Legislature declares that Plaintiffs' proposed status quo is against the public interest, and HHSC has used its legislatively granted discretion to determine that proceeding with awarding contracts is in the public interest, the equities undoubtedly weigh against granting a stay.

\*   \*   \*

52

Because (1) harm to the State's sovereign interest in seeing its agencies operate and its finances be administered according to the law outweighs the natural consequences to losing bidders, (2) the public interest is best served by avoiding harm to the State and proceeding with awarding contracts to bidders that HHSC has determined offer the best value to the State, and (3) status quo considerations cannot support Plaintiffs, the equitable balancing of the harms favors the Commissioner and, therefore, the denial of Rule 29.3 relief.

# PRAYER

The Court should deny the motion for temporary relief.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

WILLIAM R. PETERSON
Solicitor General

WILLIAM F. COLE
Principal Deputy Solicitor General

/s/ Cory A. Scanlon
CORY A. SCANLON
Assistant Solicitor General
State Bar No. 24104599
Cory.Scanlon@oag.texas.gov

JEFFREY A. STEPHENS
Assistant Solicitor General

BRENDAN A. FUGERE
Assistant Attorney General

Counsel for Appellant Cecile Erwin Young

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Nancy Villarreal on behalf of Cory Scanlon
Bar No. 24104599
nancy.villarreal@oag.texas.gov
Envelope ID: 104820652
Filing Code Description: Response
Filing Description: 20280825 Rule 293 Response_Final
Status as of 8/25/2025 4:46 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Michaelle Peters | | mpeters@scottdoug.com | 8/25/2025 4:30:39 PM | SENT |
| Julie Wright | | julie.wright@nortonrosefulbright.com | 8/25/2025 4:30:39 PM | SENT |
| Amanda DoddsPrice | | amanda.price@squirepb.com | 8/25/2025 4:30:39 PM | SENT |
| Maria Williamson | | maria.williamson@oag.texas.gov | 8/25/2025 4:30:39 PM | SENT |
| Mandy Patterson | | mpatterson@adjtlaw.com | 8/25/2025 4:30:39 PM | SENT |
| Michelle Joyner | | mjoyner@scottdoug.com | 8/25/2025 4:30:39 PM | SENT |
| William FCole | | William.Cole@oag.texas.gov | 8/25/2025 4:30:39 PM | SENT |
| Abril Rivera | | arivera@scottdoug.com | 8/25/2025 4:30:39 PM | SENT |
| Nancy Villarreal | | nancy.villarreal@oag.texas.gov | 8/25/2025 4:30:39 PM | SENT |
| David Johns | | david@cobbjohns.com | 8/25/2025 4:30:39 PM | SENT |
| Stacey Jett | | sjett@adjltaw.com | 8/25/2025 4:30:39 PM | SENT |
| Cory Scanlon | | cory.scanlon@oag.texas.gov | 8/25/2025 4:30:39 PM | SENT |
| Jessie Johnson | | jessie.johnson@nortonrosefulbright.com | 8/25/2025 4:30:39 PM | SENT |

Associated Case Party: Cook Children's Health Plan

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Karen Burgess | 796276 | kburgess@burgesslawpc.com | 8/25/2025 4:30:39 PM | SENT |
| Anna Baker | 791362 | abaker@adjtlaw.com | 8/25/2025 4:30:39 PM | SENT |
| Amy Warr | 795708 | awarr@adjtlaw.com | 8/25/2025 4:30:39 PM | SENT |
| Juliana Bennington | | jbennington@perkinscoie.com | 8/25/2025 4:30:39 PM | SENT |
| Jonathan Hawley | | jhawley@perkinscoie.com | 8/25/2025 4:30:39 PM | ERROR |
| Reina A.Almon-Griffin | | ralmon-Griffin@perkinscoie.com | 8/25/2025 4:30:39 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Nancy Villarreal on behalf of Cory Scanlon
Bar No. 24104599
nancy.villarreal@oag.texas.gov
Envelope ID: 104820652
Filing Code Description: Response
Filing Description: 20280825 Rule 293 Response_Final
Status as of 8/25/2025 4:46 PM CST

Associated Case Party: Cook Children's Health Plan

| | | | | |
|---|---|---|---|---|
| Reina A.Almon-Griffin | | ralmon-Griffin@perkinscoie.com | 8/25/2025 4:30:39 PM | SENT |
| Trisha Marino | | tmarino@perkinscoie.com | 8/25/2025 4:30:39 PM | SENT |
| Katie Dolan-Galaviz | | kgalaviz@burgesslawpc.com | 8/25/2025 4:30:39 PM | SENT |
| Matthew Gordon | | mgordon@perkinscoie.com | 8/25/2025 4:30:39 PM | SENT |
| Perkins Docketing Team | | DocketSEA@perkinscoie.com | 8/25/2025 4:30:39 PM | SENT |

Associated Case Party: Texas Children's Health Plan

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Mark Emery | 24050564 | mark.emery@nortonrosefulbright.com | 8/25/2025 4:30:39 PM | SENT |
| Warren Huang | 796788 | warren.huang@nortonrosefulbright.com | 8/25/2025 4:30:39 PM | SENT |
| Paul Trahan | 24003075 | paul.trahan@nortonrosefulbright.com | 8/25/2025 4:30:39 PM | SENT |
| Susan Harris | 6876980 | susan.harris@nortonrosefulbright.com | 8/25/2025 4:30:39 PM | SENT |
| Thomas Coulter | 4885500 | tom.coulter@nortonrosefulbright.com | 8/25/2025 4:30:39 PM | SENT |
| Kayla Ahmed | | kayla.ahmed@nortonrosefulbright.com | 8/25/2025 4:30:39 PM | SENT |

Associated Case Party: Wellpoint Insurance Company

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Robert Johnson | 10786400 | rjohnson@foley.com | 8/25/2025 4:30:39 PM | SENT |
| Michelle Ku | 24071452 | mku@foley.com | 8/25/2025 4:30:39 PM | SENT |
| Kristin Hernandez | | kristin.hernandez@foley.com | 8/25/2025 4:30:39 PM | SENT |
| Stacey Obenhaus | | sobenhaus@foley.com | 8/25/2025 4:30:39 PM | SENT |
| Benjamin Grossman | | bjgrossman@foley.com | 8/25/2025 4:30:39 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Nancy Villarreal on behalf of Cory Scanlon
Bar No. 24104599
nancy.villarreal@oag.texas.gov
Envelope ID: 104820652
Filing Code Description: Response
Filing Description: 20280825 Rule 293 Response_Final
Status as of 8/25/2025 4:46 PM CST

Associated Case Party: Superior Healthplan Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Richard Phillips | 24032833 | Rich.Phillips@hklaw.com | 8/25/2025 4:30:39 PM | SENT |
| J McCaig | 24070083 | meghan.mccaig@outlook.com | 8/25/2025 4:30:39 PM | SENT |
| Karen Walker | | karen.walker@hklaw.com | 8/25/2025 4:30:39 PM | SENT |
| Tiffany Roddenberry | | tiffany.roddenberry@hklaw.com | 8/25/2025 4:30:39 PM | SENT |

Associated Case Party: Texas Health and Human Services

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Victoria Gomez | | victoria.gomez@oag.texas.gov | 8/25/2025 4:30:39 PM | SENT |
| Jennifer Cook | | Jennifer.Cook@oag.texas.gov | 8/25/2025 4:30:39 PM | SENT |

Associated Case Party: Molina Healthcare of Texas, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Cheryl LaFond | 24104015 | clafond@scottdoug.com | 8/25/2025 4:30:39 PM | SENT |
| Jason R.LaFond | | jlafond@scottdoug.com | 8/25/2025 4:30:39 PM | SENT |

Associated Case Party: Aetna Better Health of Texas, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Joseph Knight | 11601275 | jknight@ebbklaw.com | 8/25/2025 4:30:39 PM | SENT |

Associated Case Party: Cecile Erwin Young, Texas Health and Human Services

**Automated Certificate of eService**
This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Nancy Villarreal on behalf of Cory Scanlon
Bar No. 24104599
nancy.villarreal@oag.texas.gov
Envelope ID: 104820652
Filing Code Description: Response
Filing Description: 20280825 Rule 293 Response_Final
Status as of 8/25/2025 4:46 PM CST

Associated Case Party: Cecile Erwin Young, Texas Health and Human Services

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Cory Scanlon | 24104599 | cory.scanlon@oag.texas.gov | 8/25/2025 4:30:39 PM | SENT |
| Jeffrey Stephens | | jeff.stephens@oag.texas.gov | 8/25/2025 4:30:39 PM | SENT |